Good morning, your honors, and may it please the court. Kathleen Sullivan for Universal Secure Registry. The patent claims at issue in the district court appeal are all directed to a new architecture for securely processing electronic payments over a computerized network, and all four recite specific techniques to solve a specific security problem in computerized networks. The district court erred in dismissing the complaint based on patent supposed patent ineligibility under section 101. Ms. Sullivan, this is Judge Toronto. Does claim 539, claim 22 of 539 even require a computer? It does, your honor, because if you look to the specification, you see that the problem that's being solved is the problem of network communications. So 539 requires, and if I could highlight the most important problem that's being solved, the problem that's being solved- Can you start first with the claim? I'm not sure what language in claim 22 requires that any of this be done on an electronic network. Your honor, the claim read in light of the specifications makes clear that it is solving a problem that is stored in a secure registry. The registry communicates over computers. Ms. Sullivan, this is Judge Stoll. I understand Judge Toronto's question to be asking you to look at the claim language. Is there a particular claim language in claim 22 that to you suggests that it has to be on a computer? Yes, your honor. The time-varying multi-character code implies an encrypted communication over computerized networks. And that time-varying multi-character code is common to all of the claims that issue in the appeal. And the compliance with access restrictions, the accessing information of the use of biometric identification, the claim language in 539 speaks to that- Just to be clear, there's nothing about biometrics in the 539, is there? It's just a time-varying multi-character code that somebody gets and does a few things with. Correct, your honor. The four claims represent the bookends of the novel invention here. What the contribution to computer security is here is that under the old technologies, to have security in electronic transactions, you had to try to firewall the interaction between the user and the merchant. This system at the front end and the back end creates a two location or two-step authentication system. And some of these claims are more directed to the step that uses the time-varying multi-character code to verify what is transmitted at the first authentication step. So the 137 claim 12- Can I just ask this? Is it your view that these four claims stand or fall together? No, your honor. Some have all the steps, some are missing one step. As your honor pointed out, the 539 claim 22 doesn't refer to the biometric and secret information that are used at the first authentication step in the ID device. And the 826 doesn't mention the time-varying code. But we think they do all, including the 539 and the 826, satisfy the Alice test for step one, because each of them describes an improvement in the technology for dealing with computer security. And if I could just- computerized security. In other words, Judge Stull, the problem wouldn't arise here if we weren't in a computerized network, because there would be none of the dangers that 539 is solving and the 826 is solving. The danger that if you, if the user gives information, personally identifying information to the merchant and it's stored in the merchant's computer or transmitted over an insecure line that could be hacked or result in interception or theft. But that technology was unable to provide the security that the new technology does provide. So your honor, 539 claim 22 looks to the second step. Claim 12 of the 137 patent looks principally to the front end, the first device that provides the first authentication using the user's secret or biometric information and a time-varying value. Ms. Sullivan, this is Judge Stull. There's a lot of argument from Apple to the effect of that each of these individual steps in these claims is known. For example, having a time-varying multi-character code to provide authenticity of a person, having biometric input to authenticate a person, all of these different techniques are known. What about these claims with their combination of the different techniques and having the first device and the second device? What about, is there something about the combination that makes the claims directed to something that's a technological improvement? Yes, your honor. The combination and as a minimum, it was there to dismiss under Alice step two for this reason, the combination of the steps in the claim provides a new alteration in the data flow. Old data flow was user gives personally identifying information to merchant, merchant authenticates with financial institution, financial institution transmits approval back to merchant. This fundamentally alters the data flow and all four of the claims do this by saying that the user will provide biometric information and or secret information like a fingerprint or a pin that will generate a non-predictable value or a one-time variable code, multi-character code that's in all four claims except for a 26. And the USR, the universal secure registry can verify or authenticate at the second authentication that bypassing the merchant and judge stall, that's the essence of the contribution here. This is a technological means for cutting the merchant out of the flow of data over computerized networks because the user is authenticated through the USR second authentication of the first authentication provided through the initial device. Your honor, that's the contribution that it's an alteration in the data flow. And even if this is used by convention, done by conventional components such as processors and sensors, or as judge Strato suggested earlier to conventional techniques like the use of biometrics, that is not a ground for finding the patents ineligible, the claims ineligible because the flow and the combination of them together create something new. And that's the thing that the level of generality, which as discussed earlier, violates the court's decision. I want to ask you, I hear what you're saying about the new alteration in data flow, but what is that new alteration in data flow in itself is abstract, like the idea of cutting the merchant out or, you know, some of these concepts at a high level, you know, really are just an idea. You know, so what makes this new alteration data flow a technological improvement? Your honor, what makes it a new technological improvement is the way in which the merchant is cut out. Biometric and or secret information is input by the user at the user end, generating a first authentication, generating a multi-character time variable code, which is then authenticated at the second step through reading or that time variable code and comparing it to biometric and or secret information. So it's the use of the combined biometric and secret and multi-data with the multivarying code through the two separate authentication steps. That's the technological improvement. And your honor, at the pleading stage, the court, of course, the district court should have accepted as true the allegations in the complaint, for example, at page, appendix page 273, and the specification stating that this technological improvement eliminates the need for magnetic card stripe readers at the merchant's point of sale, eliminates the physical need for users to carry multiple separate cards that could be read by those card readers, and reduces the need to have secured networks because once this technological improvement is employed, you can send the information that is a combination of biometric and secret information that generates the multi-character code to the USR, and the USR can authenticate all without the merchant ever finding out or storing the identifying information. So it eliminates physical, tangible steps in the old technology. And the specifications in all four patents make very clear that changing that technological problem, the problem of insecure vulnerability to hacking and theft, when you use magnetic stripe readers or other ways to try to do the security at the merchant's point of sale, that's the technological change, and it involves a change in the data flow, which this court has said is enough to show eligibility. Your Honor, I've focused on a legal error at Step 1, but I believe my time has expired unless you have any further questions about Step 2. A legal error at Step 1 was too high a level of generality, missed the alteration of data flow in the specific steps, in violation of TEC-TEC, ANCORA, and other cases of the court. And the legal error at Step 2, at Alice Step 2, was to look to conventional components and techniques and say that renders it abstract off the top. That's obviously, we think, a legal error under cases like EnFish at Step 1 and cases like Bastrom and Amdocs at Step 2. Your Honor, I believe that's, I haven't heard a beep, but I believe I should reserve the balance of my time. Thank you. Okay, I haven't heard that beep either, but go ahead. You can reserve whatever you've got left. Just for class purposes, this is Deputy Lichtenberg. Ms. Sullivan has just over three and a half minutes remaining. And for Mr. Selwin's argument, I intend to play the tone when he has concluded or finished up 12 minutes, unless he cedes that time to Mr. Johnson before the 12 minutes are up. Thank you. That's very helpful. Mr. Selwin. Thank you, Your Honor. Your Honor, to the extent that the representative claims use a computer at all, the computer is merely being used as a tool. This is not an improvement in the functioning of the computer itself or in any software or hardware. The representative claims claim an abstract concept, secure verification of identity implemented through wholly generic computer components operating in in PRISM against T-Mobile, Ascari against USAA, and most recently in Boom against Stripe and found it patent ineligible each time. And that's important because this court has emphasized that assessments of patent eligibility are best done by reference to prior cases. Furthermore, as in Boom, Ascari, and PRISM, the patent specification here confirms that the claims are not directed to an functionality or a new computing device. For example, with respect to the so-called universal secure registry, the specifications emphasize that a quote, maybe any kind of database, it is not limited to a particular manner, quote, of organizing the data. Ms. Selwin, this is Judge Stoll. How do you respond to the argument that this, with the inventions or the claimed inventions directed to in each of these claims, is a new alteration in the data flow so that the user provides their biometric or secret code, and then it's used to generate the multivariable code, and then the universal secure registry will verify. And that process, because a lot of these claims are method claims, cuts out the merchant and solves a technological problem. What is your response to that argument? Well, the first response is that's an argument that was forfeited by USR because it wasn't made in the complaint. Let's assume it wasn't for a minute, okay? Let's assume it wasn't because I want to hear what your answer is to the merits of that. Sure. The specific features that USR has identified as improvements in computer functionality simply don't make sense as such. USR has pointed to various things on appeal, again, none of which it pointed to in its complaint or in its brief. Number one, the time-varying code. The patents acknowledge that to be prior art and available in off-the-shelf security devices. Let me try again, Mr. Selwin. I hear what you're saying. You're right. There's a lot of individual components in these claims that are admitted to be in the prior art. Biometrics weren't invented here by this patent inventor, right? The universal code was not invented by them. I agree with you. The question is whether the claims directed to a combination, you know, creating a new method using these things like biometrics that was known, whether the combination makes the claim directed to a technological improvement. So, I want you to think about whether the combination is, you know, how does that satisfy Section 101 as opposed to picking apart each element of the claim? Sure. This case is not like BASCM. Unlike in BASCM, the patent specifications here contain no suggestion that the components or steps of the system are arranged in a non-conventional or non-generic way. Instead, the specifications emphasize the generic nature of all of the computer components and that they're operating in conventional ways. Can you focus on very specifically new data flow? Yes. So, the new data flow, which is what Ms. Selwin just emphasized, that's insignificant post-solution activity, very similar to what the Supreme Court found in Alice, where the court held that a similar claim involving the use of a third party in a financial transaction to mitigate risk inherently face-to-face business was an abstract idea. And in what sense does it make to use the Yes, because as the Supreme Court wrote in that case, quote, the use of a third-party intermediary or clearinghouse is a building block of the modern economy. And that may make it abstract, but that doesn't make it post-solution activity. Well, it is post-solution activity in the sense that the abstract idea is to secure authentication before a financial transaction. And this step is just involving a third-party as an intermediary. And recently in the InRateAble case, the court found a very similar claim that was directed to sending a customer's personal identification to a trusted intermediary to prevent another from having access to that information to be ineligible under Section 101. It's the same thing. And as for the suggestion about the combination, the patent specification doesn't support that. In fact, the very first sentence under the detailed description of each patent states the opposite. It says the invention is not limited in the application to the details of construction and the arrangement of components set forth in the following description or illustrated in the drawings. So the suggestion now that there is something about the ordered combination is contradicted by the specification itself. And it's also contradicted by the way the specification describes how the components of the system interact or operate. To give another example, the user interface may be, quote, any input and output device and, quote, is not limited to any particular manner of interfacing an operator with the USR system. Access to the USR system may be, quote, by any secure access device. And the specification goes on to say such a system may be implemented in software, hardware, or firmware. Communications between the interface centers and the computer system may take place according to any protocol. So between the complaint and the patents, there's nothing that creates any actual basis for USR to the Boom Against Stripe case where considering a very similar claim as the present one, this court concluded that, quote, the order and timing of the claim elements are merely the necessary steps of implementing the abstract idea. So again, every feature that USR has identified as an improvement is one that the patent emphasizes is generic. And the suggestion that was made that the complaint somehow supports there being some improvement or novelty, that's just not there in the complaint. The complaint makes no allegations that even if assumed to be true would make the representative patent claims eligible. The complaint says almost nothing specific about the asserted patents, much less allegations that suggest that they improve computer functionality. The paragraphs that mention the asserted patents, paragraphs 25 through 28, merely recite the date of issuance, the title, and the owner and inventor of each patent. And then paragraphs 22 and 23 very vaguely refer to USR's technology without mentioning any specific patent or claim, much less a supposed improvement in computer technology. This is Judge Toronto. I think I'm going to ask you the same question I asked Ms. Sutherland. Is it your view that these four claims stand or fall together? I wouldn't say it quite that way. I would say that the same reasoning applies to all four claims. That is, there are differences among the claims, but they're all directed towards the same basic idea. And then they mix and match certain claim elements, all of which the specification emphasizes are generic. What case, if any, of ours... Part of what I hear is something like, sometimes a combination is more than the sum of its parts, but not here. What case of our... Because obviously you can put together, as the Supreme Court said in, I don't know, Mayo or Alice or somewhere, most inventions involve familiar components. So the putting together is very, very frequently what is inventive. And your point here, I gather, is here the putting together is not inventive. It's basically the equivalent of if one ID is good, two forms of ID can be better. And the idea of I want two forms of idea is itself abstract. What, if any, of our cases might lend support to that distinction? Well, the whole line of this Court's cases that discuss merely invoking computers as a tool, that is what these claims have done. To the extent that they involve computer components, they're merely using those as a tool to implement the abstract idea. There's no claim here to an invented new hardware or software or any other specific improvements in the technology underlying the claims. And the specification could not be clearer that the claims claim no new software, hardware, processor, programming language, memory interface, user interface, database, and so forth. And there's nothing suggested about the combination of those components that would make it an inventive concept either. Again, to the contrary, the specification emphasizes that there is nothing special about the combination or the order of those components. And when you look at the method steps themselves, they're done in entirely the natural order that one would expect. Mr. Selwin, why isn't this a case like DDR where the computer itself creates the problem? That is specifically because, you know, the information of the user can be so easily repeated and sent around that when you're talking about inserting a credit card or what have you in a computer, there's a loss of confidential financial information when you're doing transactions involving computers. Because the claims in DDR were necessarily rooted in computer technology. They addressed the problem of retaining website visitors in the context of the internet. And those claims were found not to recite a fundamental economic or longstanding commercial practice. In contrast, the claims here are directed towards a fundamental economic and they're also ones that can be done entirely in the human mind. As this court wrote in Erickson against TCL, controlling access to resources is exactly the sort of process that can be performed in the human mind or by a human using pen and paper, which we have repeatedly found unpalatable. Every single one of the claims here can be done in pen and pencil or in the human mind. And there's nothing about the combination of elements that takes them out of the realm of renders them an inventive concept. You're into Mr. Johnson's time, you know. Yes, I will yield the balance of justice to Mr. Johnson. Thank you, Your Honor, and may it please the court. I'd like to make two simple points. One about USR's claims that the claim combination improved computer security, and one about boom payments, and in particular, as it relates to the level of generality and the flow of data. As to computer security, USR's argument rests on a false premise, really a sleight of hand. The generic components themselves are the same as before, but not only that, how they communicate and function is the same as before. Their physical arrangement is the same as before. The time varying code functions just as before. The steps happen in exactly the same order, and you can see this clearly from figures seven and eight on pages 225 and 226 of the appendix. The only thing that's different is the information sent between the components and who receives it, a third party. And the only thing supposedly more secure is the information not sent. The seller never sees the credit card information that it used to see. That is not a specific technical improvement to computer security. It's, as Ms. Sullivan put it, altered data flow. It's just rerouting information and storing it differently. It's using computers as a tool to carry out a business practice as old as banking, essentially in an escrow format just like Alice, which brings me to my second point about boom payments. On point after point, boom rejects every argument that Ms. Sullivan makes here. Take level of generality. The patent there recited a 10-step payment system using third-party and transaction-specific buyer identification codes. This is how the court defined the abstract idea, two words, payment escrow. It said this is just passing information back and forth with a third party. And it goes on to say, and this is a quote, use of an identification code does nothing more than overlay a second layer of extraction, specifically identity authentication, on the escrow procedure. The claims are reminiscent of Alice. Now the district court here actually used a lower level of generality than this court did in that case. It said obtaining the secure verification of a user's identity to enable transaction. But any suggestion that that was too low is foreclosed by boom. And Asgari, which took an even lower level, also found similar claims specifically involving a time-sensitive code invalid under Alice and this court affirmed under Rule 36. Now that brings me to the aspect of inventive concept and the flow of information. Boom payments also spoke directly to that. Boom argued that use of the buyer identifier was an inventive concept and this is why it said that. Because it increases online payment security without making the payment flow burdensome and removes the need for any static buyer information, payment information, such as credit card numbers. Exact same things claimed here and this court said that is not inventive. It's not rooted in a technological problem or solution. We urge the court to affirm this case falls squarely under boom, Asgari, and PrismTex. Thank you, counsel. Ms. Sullivan, you've got a little bit over three minutes. Thank you, your honor. Three quick points, your honor. First, as Judge Stoll suggested in the question earlier, this is a problem that begins with computerized networks. This is not automating a process that was used in the analog world. It's a problem that begins because existing technologies create insecurity problems when you look to security at the merchant through magnetic cardstripe readers and so forth. So this is not a case like Alice that is about automating an analog process. Far from being the second, the combination, I didn't hear anything in Mr. Sullivan. The combination of elements, even if they are conventional, is not new and unconventional. The alteration of the data flow means that the merchant is not privy to, as a matter of technology, to the identifying information because the... Ms. Sullivan, this is Judge Toronto. In what sense is there an alteration of data flow here that wasn't true in Alice with using an intermediary, which I would think almost by definition means you're moving data to some new middle person? Your honor, what's new is there's a first authentication step that the user is able to generate biometric data, secret data, time-varying code, and there's a second authentication step at the USR level, and there's never any transmission, as there was in the prior technologies, of secret information to the merchant where it could be stored, where it might be insecurely stored or intercepted. That's the alteration, your honor, and there's nothing in any of the claims or the specifications that suggest that that sequence of user connecting directly to the USR was in the prior technologies. It's not just using the USR as an intermediary to verify. It's having direct communication across a computer network. Your honor, while I'm on the USR, I just want to answer your question, Judge Toronto, about what in the 539 patent refers to computers. I'd refer your honor to the preambular paragraph of Claim 22, which refers to secure data stored in a secure registry. Of course, we're at the dismissal stage, and that hasn't been subject to claim construction, but the specification makes clear that the secure registry is something that involves computers, and if I could just refer your honor to a few places in the spec for the 539, I'd refer your honor particularly to appendix 235 to 236, which is where in column 5, line 30, through column 7, line 10, it discusses the computer system. Similarly, your honor, if I could commend the court's attention to the 539 patent column 8, starting at line 22, which refers, as I suggested before, to the one-time non-predictable code as something that is transmitted to the computer system. Your honor, this is an alteration in the technology of the data flow, not the concept of using an intermediary. And the last point, your honor, would simply be that this is at the motion to dismiss stage. There hasn't been claim construction that might illuminate the terms in the claim. The specification couldn't be clearer that the old data flow involved a different kind of technology, and that there are concrete, practical, tangible changes in the technology of security here that eliminate the need for multiple cards and for dangerous things like magnetic card breaches. Thank you very much. We think you should reverse and find these claims patent-eligible under 101 at either Alice Step 1 or Step 2. Thank you, your honor. Thank you, Ms. Sullivan, for wrapping up.